And I'm not going to pronounce this well. Galyautdinov, can someone help me? Galyautdinov.  Versus Ashcroft. I'm going to quiz the court. My name is Christopher Karofsky, and I would like to reserve two minutes for rebuttal. Your Honors, we have focused in our brief on two issues. We believe are raised by this appeal. One, that the conduct of the hearing, in particular, the exclusion of much of applicants, in this case the petitioner's evidence, violated the due process clause of the Fifth Amendment and denied him a fair hearing. The second argument being, irrespective of the due process issues, that the handling of the proceeding by the immigration judge and his decision, I should say, was not supported by substantial evidence in denying asylum, both on the basis of past persecution, the risk of future persecution, and withholding of removal. I'd like to focus this morning on the first argument, in particular, and discuss an issue that was mentioned in our briefs, the fact that this was a pro se applicant. And I believe if you compare the facts of this case with the Lada case cited in our, I'm sorry, the Jacinto case, which is cited in our briefs, 208 F3, 725, you'll see that the handling of this hearing was much more egregious than the handling that was found to be a violation of due process in Jacinto. There, the judges held that there was, in effect, not adequate warning to a pro se applicant.  There was no prevention of the applicant from putting on his case. Here, you have much of the documents of the applicant precluded from evidence, 12 documents altogether that were excluded, 13 others that were given diminished weight. And in effect, what happened here was that the petitioner was precluded from putting on his evidence. Counsel, do we need to reach the due process issue? Do you have an argument based on just the exclusion of evidence of being an abuse of discretion under the circumstances in this case? Absolutely, Your Honor. We believe that's an alternative basis for finding that the handling of this hearing and the decision reached deserves reversal. In terms of the due process violation, what is the prejudice to your client? If the documents had been admitted, would the outcome have been different? We believe it would, Your Honor. But citing the case of Colmenar and Campos-Sanchez, as we did in our brief, we only need to show that, quote, the outcome would have potentially been affected by a different handling of the proceedings. And we believe that's clearly shown here. If you compare the facts of this case with Colmenar and Campos-Sanchez case, there the justices grasped with the same issue and said, we're not able to speculate on whether definitively a difference would have been reached, a different outcome would have been reached. But it's enough if it would potentially affect the outcome. And we feel that that's clearly the case here when you're talking about 12 documents. I would mention a couple very quickly. One, a document that had my client's photo on it, identification of him. This is a kind of evidence that an asylum lawyer like myself loves to have. I've been doing this 20 years. And rarely do you have a case where the person's photograph and name are there indicating who he is, what he was, what he did in his home country. This was all in English. There was a side-by-side Russian translation. The judge excluded this based on the grounds that the Russian language was not translated. But he could have included the evidence of the English text, which identified my client and revealed that he had been a victim of persecution. Several. To me, a lot of this hearing was inexplicable. But he did say that there was some issue. He was concerned. I don't know if it was with the trustworthiness of the translation because it was performed by your client's prior lawyer. Yes, Your Honor. I want to be clear, though. That particular instance that I mentioned, which was key evidence, had nothing to do with the translation by his prior lawyer. The other documents, you're absolutely right. There was several documents excluded on that basis. There have been no citations to the record or to any authority justifying that as a grounds for excluding evidence. Granted, it's not the best procedure. But in a case like this, where this person's deportation and potential exposure to persecution is at risk, we believe that that was inappropriate behavior under the circumstances, particularly since he did not allow the petitioner a continuance to supplement the record. In a couple of other instances, the judge eyeballed documents and translations and said, well, this doesn't appear to be the same length as the translation, so I'm excluding it, even though it was a certified translation by someone other than his prior attorney. And there were three or four documents excluded on that basis. So it was very arbitrary behavior. And as Your Honor suggests, in addition to a due process argument, we have an argument that this just simply was arbitrary behavior and therefore justifying reversal. I would also ask Your Honors to compare the facts of this with the Lada case. If it was reversed, what would be the result, the bottom line, so far as your client's concerned? He'd go back for another hearing? Yes, Your Honor, at a minimum. Of course, we believe that a reversal and a finding of eligibility for asylum is justified. But at a minimum, what we're asking the court to do is to send this back for a new hearing so that this evidence may be submitted and properly considered. Apparently, the IJ said your client was credible. And he said there was no doubt that he belonged to the church and that he was a Pentecostal minister. So he accepted all of that. Now, would these documents that you're discussing have proved persecution? We believe so. And bear in mind, Your Honor, as we cited in our brief, the Supreme Court, the US Supreme Court, has said that all we needed to show is a 10% risk, as little as 10% risk of persecution. So it's not that we need to prove persecution, but prove a well-founded fear of persecution. Well, I understand that. My question to you is the excluded documents, did they go to the issue of persecution? Definitely, Your Honor. You were talking about numerous statements from persons who were colleagues, religious colleagues of the respondent, the petitioner, several of whom were from Russia, several others in other parts of the world, which document precisely the threats to my client's family, the fact that he was run over by a car, in one instance, by someone who was a Muslim extremist. That's not established in this record, is it? It is established that in 1987. He was hit by a car. He assumed the person who hit him was Muslim. It's not established he was Muslim, is it? If I'm mistaken, tell me. You're right, Your Honor. It's not established. That was his assertion. And there were numerous other statements from other members of his religious group, which testified to the fact that he was a religious leader, was very unpopular, threatened, and had experienced persecution. We believe that would have gone to the well-founded fear. I don't know if this is what Judge Fletcher's getting at. Aside from the unfairness of excluding all this evidence, the IJ did find your client credible. He did testify to two arrests, detention, other persecution. The State Department report is in the record. So why doesn't this evidence, without the excluded evidence, support a finding of past persecution, and then a rebuttable presumption arises, which apparently the government didn't rebut? I don't know. I guess that's what I'm sort of saying. Even without these documents, don't you have a case, a supportable case, in the record? I would certainly agree with you, Your Honor. I think that this decision justifies reversal merely on the substantive grounds. And I would ask if I could reserve the remaining time for rebuttal. Thank you. May it please the Court. My name is Lisa Watts, and I represent the Attorney General in this case. The positioner's case here fails on the standard of review. That is, if you look at all the evidence in this case, the evidence does not compel a finding that Mr. Golotnyov suffered from a well-founded fear of future persecution if he is returned to Russia. Is that including, is that assertion with respect to just the documents in the record? Are you including in that the documents that were excluded? The Attorney General's position is that the documents that were excluded in this case were properly excluded. No, you just made an assertion that substantial evidence does not compel a contrary finding to that of the IJ, and I'm just wondering if that's based on just the evidence in the record, or if you're basing that on the evidence that was excluded. Well, without conceding the arguments on whether or not the exclusion was permissible or appropriate, even those documents would not support a finding of a well-founded fear of persecution in this case. The Attorney General takes issue with the fact that it would. If you look at the evidence in the record, would you say that including those documents would have potentially affected that conclusion? The documents that were excluded were cumulative of evidence that the immigration judge had already found was credible. Several times in the record, the immigration judge noted that the Petitioner was credible. He had no doubt as to the Petitioner's religious beliefs and his passion for his religion. Ultimately, here, the immigration judge found that the instances of discrimination and harassment that this gentleman experienced over the years did not rise to the level of persecution if that term is accepted under the Act. And that's really the issue here. Not that the immigration judge did not believe the Petitioner, but that ultimately the substance of what this man was claiming did not rise to the level of persecution. Could one read this record and assume that the immigration judge put weight, some weight, on the fact that he had once spent some time in Sweden and the fact that members of his family who practiced the same religion were still in Russia? I'd have to agree with you, Your Honor, that the record could be read that way. Ultimately, the standard of review requires that the court determine that the evidence compels a contrary finding. Certainly, the fact that Mr. Golutnov had traveled to Sweden and was offered by his own admission in the record a chance to stay there and apply for asylum there, and then he returned to Russia after that time certainly played a part in this decision. Suppose one had been persecuted but had also traveled to Sweden and had an opportunity to stay there and also had members of his family who were of the same religion and are living in Russia but not being persecuted. Would that be a basis for then deciding that this person, under these facts, with his evidence, was not persecuted? I don't think so. I think, first of all, that's a different case. Ultimately, here, the immigration judge determined that even the events that occurred in 1981 to 1991 did not constitute persecution at all. So in our review, we look to see whether he's right in making that determination? Is that what we look to see? I'm sorry, I didn't mean to. When we decide the case, what do we look to see, so far as you're concerned? Well, ultimately, here, I think you look at the immigration judge's determination. He first determined that there was no past persecution and, therefore, that the burden had not shifted to the government to then take a look at what the current conditions are in Russia and to look within that prison to see whether the petitioner had a well-founded fear of future persecution there. I think if you look at this record, certainly I would agree that since Mr. Golutnov's testimony was accepted as credible, that the instances he speaks of were regrettable. They were discrimination, perhaps. They were harassment, perhaps. But the immigration judge did not find that they resulted in persecution, the extreme concept that is contemplated under the Act. Certainly, there are cases with similar circumstances that have gone either way. And I'm not arguing here that a reasonable fact-finder could not come to a contrary conclusion. My principal argument here is that if you look at the standard of review, that the evidence does not compel a contrary finding. Apparently, the Pentecostal religion requires proselytizing on the streets. And he was arrested for doing that and was confined for that reason. Is that persecution? It isn't under the Act, Your Honor, because the attorney general has said it's not. In fact, in Russia at that time, and I that you refer to, it was against the law in Russia for any religion to proselytize on the street, to hand out pamphlets, that sort of thing. So it's not on account of any particular religion, and it's not persecution under the Act. It may be harassment and discrimination. For his religion, the proselytizing was an essential part, as I understand it. It's not an essential part of all religions. Does that make a difference? I don't think it's irrelevant, Your Honor. But I don't think that it changes the outcome of this case. He testified in respect to this, whether we could have gotten citizenship in Sweden or could have gotten asylum there. He testified that this was a difficult decision for him, but God told him at that time we ought to go back. So it doesn't seem that we should be considering this, that the IJ should have considered the Swedish interlude at all in the consideration. Do you agree with that? I do, because I don't think the case rises and falls on that. If you look at the position of circumstances at the time that he entered the United States in June of 1997, he was employed by the government. He was living in a government apartment in which his family still resides there. He voluntarily quit his job. He came to the United States on a visitor's visa because he was invited by another parish here. There is no concrete testimony in the record that at that time he was at all fleeing from any persecution from the state or otherwise. The circumstances at the time that he came to this country, and by his own admission, he said when he got here, he was going to investigate to see what the circumstances were that he could come here. But certainly, the circumstances contemporaneous with the time of his departure from Russia do not compel a finding of a well-founded fear of persecution. Ultimately, the government's position is that this case is determined by the standard of review. Our pertinent arguments are in our brief. And if the Court has no further questions for me at this time, thank you for your time. Thank you, counsel. Thank you. Your Honor, I would just like to briefly address a couple of the issues. One, regarding the trip to Sweden, this was in 1991, 12 years ago, before the even breakup of the Soviet Union. I do not believe that that should be held against him, since that was far before some of the persecution, and particularly the arrest, that Your Honor referred to. How did the arrest arise to the level of persecution as has been defined in our cases? I believe I would disagree with my opposing counsel. If you look at the cases that I've cited, in particular Popova and, I believe, the Magoyan case, there's approximately six of them at the end of my brief. These are cases where the same type of behavior that occurred to my client was determined to be persecution. And I believe that arrest under those circumstances where someone is expressing their religion, whether or not there's some statute which says it's illegal, does constitute persecution under our statute. But it seems like an odd argument. So you could have a law that makes killing a Muslim legal, and then come in here and say there's no persecution of the Muslim, because there's a law that says you can do that. Absolutely. Seems very odd argument. I think there's many cases where this court and other courts in this country have found asylum, where I found persecution by behavior that is according to the law in that country legal. Of course, that's almost the definition of persecution when it's embodied in the law by the government. Absolutely. I'd like to, if I might, just leave the court very briefly with a statement from the case of Komenar. At the end of the case, the court said, we do not enjoy second guessing the immigration judges run the way they run their courtrooms. But when a petitioner has so clearly been denied a full and fair hearing, we have no choice. Judges do little to impress the world that this country is the last best hope for freedom by displaying the hard hand and closed mind of the forces asylum seekers are fleeing. Better that we hear these claims out fully and fairly, and then make an informed judgment on the merits. This is consistent with our role as judges and the values our Constitution demand no less. I would ask that. What the government would say if she had an opportunity to rebut, you had that statement and you could have read it before she came to argue, and then she might have rebutted it. What she'll say is, does this record compel the finding of persecution? If it does, then the court should reverse. If it doesn't, the court should affirm. I think that would be her answer. Do you think that's the law? I don't doubt that, Your Honor. I apologize if I've stretched the purpose of rebuttal here, but I think that the record does compel a reversal, and at a minimum compels a rebuttal. Thank you, counsel. Thank you. All right, Galatinov will be submitted. And we'll take a, no, actually, Stemjanov versus Ashcroft has been submitted.
judges: B. Fletcher, Farris, Wardlaw